## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | |
| | CRIM NO. 1:18-cr-201 |
| v. | |
| JORDAN WILLIAMS, | |
| | **OPINION** |
| *Defendant*. | |

This matter is before the Court on the Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582 (c)(1)(A), filed by Defendant Jordan Williams ("Williams") [Dkt. 32].[1] The Court is in receipt of the opposition filed by the United States [Dkt. 33]. The Court has considered the parties' submissions as well as the applicable law and decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the reasons set forth herein, the motion is denied.

### I.   Background

Williams is a 29-year-old individual presently incarcerated at Allenwood Medium FCI. On December 18, 2018, he entered a guilty plea to a one-count grand jury indictment charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Thereafter, on April 19, 2019, the Court imposed a sentence for a custodial term of eighty-four months with three years of supervised release. Defendant Williams is now serving out his sentence and is scheduled for release on September 7, 2024.

---

[1] The United States advises it has been informed by counsel for Defendant Williams that his *pro se* motion [Dkt. 29] will be withdrawn. Accordingly, the Court only addresses the counseled motion [Dkt. 32].

1

Defendant Williams' prior application for compassionate release made to the Bureau of Prisons was denied on June 1, 2020. He now moves before this Court seeking a reduction of his sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (the "FSA"), which the United States opposes.

Williams submits that his early release is justified by "extraordinary and compelling" circumstances resulting from the death of Tasia Brooks – the mother of his minor son, J.W. – who was tragically killed in an automobile accident on October 18, 2019. Specifically, he argues that a reduction is warranted considering the need for a parent to assume custody and care of J.W. in the wake of his mother and primary caregiver's recent death and his own incarceration. Defendant Williams further contends that the factors of 18 U.S.C. § 3553(a) weigh in favor of release.[2]

## II.     Legal Standard

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009). First, a defendant filing such a motion must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or experienced a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). When administrative exhaustion is satisfied, the FSA allows courts to modify a term of imprisonment in any case where (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy

---

[2] Those factors listed under 18 U.S.C. § 3553 include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, ... to provide just punishment for the offense ... [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)-(B).

statements issued by the Sentencing Commission," and (3) where the court has considered the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c); *see also United States v. Rodriguez*, 451 F. Supp. 3d 392, 394–95 (E.D. Pa. 2020).

Since the passage of the FSA, neither Congress nor the United States Sentencing Commission has supplied a definition for "extraordinary and compelling reasons." Prior to the passage of the FSA the Sentencing Commission issued a policy statement providing examples of circumstances qualifying as "extraordinary and compelling reasons." See U.S.S.G. § 1B1.13. Although the policy statement predates the FSA and is therefore explicitly limited in its application to Bureau-initiated motions, the Third Circuit has explained that the examples it provides may nevertheless guide a court's interpretation and be used to "shed[ ] light on the meaning of extraordinary and compelling reasons." *See United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) ("Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute."). The policy statement sets forth three specific "extraordinary and compelling" reasons: (1) medical conditions, (2) complications in old age, (3) family circumstances, and (4) "other reasons" as determined by the Director of the Bureau of Prisons. *See* U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018). Applicable "family circumstances" include "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 n.1(D), cmt. n.1(C)(i). The policy statement also includes a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described[.]" U.S.S.G. § 1B1.13 n.1(D).

Only if a defendant's circumstances qualify as "extraordinary and compelling" will the

3

court look to the Section 3553(a) factors to determine whether he or she is entitled to a reduction in sentence. 18 U.S.C. § 3582(c). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ... and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

The defendant bears the burden of proving by a preponderance of the evidence that the requested relief is warranted. *United States v. Jeffries*, No. CR 14-106, 2021 WL 2000555, at *7 (W.D. Pa. May 19, 2021).

### III. Discussion

There is no dispute that Williams has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (The FSA provides that a motion for such relief may be brought by either the Director of the Bureau of Prisons or by the defendant himself once the defendant has exhausted his or her administrative remedies.).

The record reflects that the care-giving challenges presented by the tragic death of J.W.'s mother have been met by J.W.'s grandparents. According to Williams, J.W. "currently resides with his maternal grandfather, Torrey Brooks, who has legal custody." Mot. at *4. J.W.'s maternal grandmother is also involved in the care of J.W. and J.W. sees his paternal grandparents every three weeks as directed by court order. *Id.*

To prevail on a motion for compassionate release predicated upon the movant's role as a caregiver, a defendant must show that "there is no caregiver besides the defendant able to care

4

for the child[.]." *United States v. Spencer*, No. CR 14-050, 2022 WL 2873080, at *2 (D.N.J. July 21, 2022); *see, e.g.*, *United States v Ali*, No. 1:11-CR-00752, 2022 WL 3357915, at *3 (D.N.J. Aug. 15, 2022) (denying defendant's motion for compassionate release where defendant had not shown that he was the only available caregiver). The circumstances of J.W.'s care do not meet this burden because Williams has not demonstrated a need to provide care for J.W. due to the unavailability of a caregiver. *See United States v. Rooks*, No. 21-CR-038, 2022 WL 267899, at *7 (E.D. Pa. Jan. 28, 2022), aff'd sub nom. *United States v. Rooks*, No. 22-1332, 2022 WL 2964805 (3d Cir. July 27, 2022) ("[defendant] cannot establish he is the sole caregiver available without addressing the inability of additional nearby family members to provide care for his child in his absence.").[3]

Williams states that the challenges of providing adequate care for J.W. are difficult for his grandparents to meet and that Mr. Brooks is too proud to admit he is struggling to provide care. Mot. at *5. Williams' unsupported claim, even if true, is insufficient to establish extraordinary and compelling circumstances. *See Rooks*, 2022 WL 267899, at *6 ("it is not enough to show a potential caregiver is merely 'inconvenienced' by the childcare[.]"). The responsibility associated with rearing a young child is demanding, but Williams has not shown that Mr. Brooks or other family are without the financial capacity or other means to support J.W. pending the duration of his custodial term, which is anticipated to end on September 7, 2024.

Further, Williams' claim that early release is critical to J.W.'s well-being and "fragile emotional situation" considering the need for a parental figure during the child's formative years is not without merit, but is at odds with the record. Mot. at *5-7. Williams' own version of the

---

[3] Notwithstanding Defendant Williams' representations that his intention is to live with and support J.W. upon release, it is unclear what actual custodial or parental rights, if any, he has retained over J.W. that would demonstrate his suitability to assume responsibility as caregiver.

5

facts indicates that J.W. is "healthy, enrolled in full-time day care," and his "schedule has not changed since his mother died." Mot. at *4-5. Mr. Brooks also reported that "J.W. has not been affected by his mother's death" and "does not understand the situation." *Id.* By these accounts, J.W.'s living situation appears stable. And nevertheless, courts regularly observe that the absence of a parental figure is a natural consequence of incarceration. *See United States v. Cromwell*, 2021 WL 3561244, at *3 (D.N.J. Aug. 12, 2021) ("The impact on family members is an inherent feature of any term of incarceration."); *see also United States v. Doolittle*, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) ("The Court recognizes that the family members of incarcerated individuals often struggle to cope without their relative's daily presence and aid, but Defendant's application does not meet the criteria for compassionate release under the law."). Insofar as Defendant Williams contends his release is called for because J.W. is "rotating between three different homes throughout the month" [Mot. at *4], this too is neither extraordinary nor compelling under the circumstances. *See Rooks*, 2022 WL 267899, at *5-7 (rejecting argument that compassionate release was appropriate despite that incarcerated defendant's child was "spread out amongst several family members").

Because the Court finds that Defendant Wilson has not presented extraordinary or compelling reasons warranting his early release under 18 U.S.C. § 3582 (c)(1)(A)(i), it need not consider the factors set forth under 18 U.S.C. § 3553(a).

### IV. Conclusion

For the reasons set forth herein, the Court will deny Defendant Williams' Motion for Compassionate Release [Dkt. 32]. An appropriate order will follow.

October 12, 2022 /s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez, USDJ